IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT EDWARD ZUCKER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-01790-K |
| | § | |
| JERRY LEE FARISH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Texas Bank and Trust Company and Barry Brown's Motion to Dismiss and Brief in Support (the "Motion") (Doc. No. 37). Defendants Texas Bank and Trust Company and Barry Brown move the Court to dismiss, *inter alia*, the civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. Because Plaintiffs fail to allege a plausible claim for relief for their civil RICO claim, the Court **GRANTS** the Motion as to the civil RICO claim and **DISMISSES WITHOUT PREJUDICE** Count Ten of Plaintiffs' Verified Complaint (the "Complaint") as to all Defendants. Because the civil RICO claim is the only federal claim, and diversity jurisdiction is not properly pleaded, the Court exercises its discretion to not retain jurisdiction over the remaining state-law claims; therefore, the Court **DISMISSES WITHOUT PREJUDICE** all claims, including the civil RICO claim, as to all defendants.

1

## I. Factual Background

The proposed representative class plaintiffs in this case are various persons alleging that they were victims of a Ponzi scheme at the hands of Jerry Farish, Jill Farish, Nathan Farish, Erick Farish, and Nicholas Farish (collectively, the "Farish Defendants"), as well as several entities allegedly operated by some or all of the Farish Defendants (collectively, the "New Summit Defendants"). The Complaint alleges that Barry L. Brown and Texas Bank and Trust (collectively, the "Bank Defendants"), along with Schultz and Kellar, PLLC, Texas American Title Company, and Title Resources Guaranty Company (collectively, the "Title Defendants"), assisted the Farish Defendants and/or New Summit Defendants in carrying out the Ponzi scheme.

The 524-paragraph Complaint describes at length, almost entirely upon information and belief only, the various "sub-schemes" of the Ponzi scheme as they relate to different sub-classes of plaintiffs. The first two proposed sub-classes consist of the following proposed representative class plaintiffs: Robert Edward Zucker, Lory Baraz, Baraz Zucker Properties, LLC, and Robert E. Zucker Investments, LLC (collectively, the "Zucker Plaintiffs"). The third proposed sub-class consists of the following proposed representative class plaintiffs: Gary Werezynski ("Werezynski"), GMW II, LLC ("GMW II"), and Marsha Frost ("Frost"). The Complaint alleges that the Farish Defendants carried out the Ponzi scheme in slightly different manners as to each sub-class. For purposes of this Order, the precise execution of each of the three

different sub-schemes is irrelevant. The Order instead describes the alleged Ponzi scheme generally and refers to specific factual allegations as they pertain to the civil RICO claim.

Plaintiffs allege that the relevant real estate development business initially operated in the following manner: An investor would contribute to the purchase of a vacant real estate lot and obtain a loan for the construction of a luxury home. The Farish Defendants and/or New Summit Defendants then served as the contractors and developers of the house. After selling the luxury home, the investor would receive their initial investment plus 20% of the sales proceeds, and the Farish Defendants and/or New Summit Defendants would receive the rest of the net profits.

The alleged Ponzi scheme spawned once the Farish Defendants and/or New Summit Defendants began demanding that investors convey title or give power of attorney over the property to them. The sales of the luxury homes also had to be listed through the realty services of the Farish Defendants and/or New Summit Defendants. With full control over any proceeds, the Farish Defendants and/or New Summit Defendants would use the proceeds to fund other investments rather than return the promised amount of proceeds to investors. The Farish Defendants and/or New Summit Defendants also allegedly continued the Ponzi scheme through convincing some investors to execute a promissory note that used the profit from an initial investment to fund a different project. In other instances, the Farish Defendants and/or New

Summit Defendants recruited new investors by having these investors execute a promissory note with the Farish Defendants and/or New Summit Defendants from the outset. The Farish Defendants and/or New Summit Defendants directed the majority of the title work to the Title Defendants, and the Bank Defendants were primarily responsible for providing the financing for the construction of the luxury homes.

The sole federal claim alleged by Plaintiffs is the civil RICO claim, which is Count Ten and begins with paragraph 510 of the Complaint. Plaintiffs incorporate the preceding 509 paragraphs and then allege that all Defendants violated 18 U.S.C. § 1964(c) (2012) through a pattern of criminal conduct including: (1) wire fraud, (2) conspiracy to commit wire fraud, (3) fraudulently claiming an interest in one or more parcels of real property, and (4) money laundering.

## II. Procedural History

Plaintiffs moved for a temporary restraining order to prevent a foreclosure sale on one of the investment properties. Judge Sidney A. Fitzwater, sitting as duty judge, denied the temporary restraining order. In the same filing, Plaintiffs moved the Court for a writ of attachment and expedited discovery. The Court has not ruled on either of those motions. Plaintiffs have also dismissed Defendant Jerry Hatfield from this case.

In their Motion, the Bank Defendants argue, *inter alia*, that Plaintiffs failed to allege facts supporting a civil RICO claim because Count Ten is almost entirely statutory quotes and allegations directed only at the Farish Defendants and/or New

Summit Defendants. In Plaintiffs' Response to Defendants Texas Bank and Trust Company and Barry L. Brown's Motion to Dismiss and Brief in Support (the "Response") (Doc. No. 67), Plaintiffs briefly describe how the Bank Defendants participated in the Ponzi scheme. Other than arguing that the proceeds of the Ponzi scheme helped perpetuate an "enterprise," and that all "conduct affected interstate commerce," Plaintiffs do not explain how the facts underlying the alleged Ponzi scheme properly plead a civil RICO claim.

## III.    Applicable Law

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id*. The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555. The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Id*. at 570. The court must view

all facts in the light most favorable to the plaintiff. *Gonzalez v. Kay*, 577 F.2d 600, 603 (5th Cir. 2009).

The Court must generally determine a motion to dismiss based solely on the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit also allows the district court to consider documents that are "referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

When a complaint alleges fraud as part of its action, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Courts interpret this rule strictly; a plaintiff that pleads fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). "Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

Rule 9(b)'s demand for particularity works in tandem with "Rule 8(a)'s insistence upon 'simple, concise, and direct' allegations." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). "A complaint can be long-winded, even prolix,

without pleading with particularity." *Id.* A lengthy complaint that incorporates by reference all preceding paragraphs as it progresses through multiple counts, often referred to as "shotgun pleading," is as an example of this issue. *See Moore v. Carrington Mortg. Servs., LLC*, No. 3:17-cv-3132-G-BN, 2018 WL 3853711, at *3–*4 (N.D. Tex. July 17, 2018) (Horan, M.J.). Complaints of this type "set forth an excessive number or [sic] facts" before alleging that all the provided facts support various counts in the complaint, "with the result that 'each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.'" *Martin v. Tesoro Corp.*, No. 2:11 CV 1413, 2012 WL 1866841, at *2 (W.D. La. May 21, 2012) (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).

When a plaintiff asserts a civil RICO claim that rests upon the predicate act of wire fraud, the complaint must satisfy Rule 9(b)'s particularity requirement. *Tel-Phonic Servs., Inc. v. TBS Int'l., Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992); *see Williams*, 112 F.3d at 177; *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 657–58 (S.D. Tex. 2016); *see also U.S. v. Phipps*, 595 F.3d 243, 245 (5th Cir. 2010) (explaining that the same analysis for mail fraud applies to wire fraud). A complaint must, in other words, identify a particular instance of wire fraud, explain the defendant's relationship to the wire fraud, and describe when or how the fraud occurred and why a particular act was

fraudulent. *See Hill v. Hunt*, Civ. Action No. 3:07-CV-2020-O, 2010 WL 54756, at *4 (N.D. Tex. Jan. 4, 2010) (O'Connor, J.).

## IV.     Analysis

The Court address the Complaint's civil RICO claim in three parts. First, the Court addresses the insufficient pleading of the civil RICO claim as set forth in Count Ten of the Complaint. Second, the Court addresses why none of the facts alleged in the rest of the Complaint support a civil RICO claim. Third, the Court addresses its jurisdiction in light of the dismissed civil RICO claim.

## A. Count Ten of the Complaint Fails to Properly Plead a Civil RICO Claim.

When a plaintiff suffers an injury because of a defendant's RICO violation, the plaintiff may bring a civil RICO action. 18 U.S.C. § 1964(c) (2012). The RICO statute enumerates four types of prohibited activities. 18 U.S.C. § 1962 (2012). To state a claim based upon any four of the prohibited activities in § 1962, "a plaintiff must allege: 1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989); *see also Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) ("Reduced to its three essentials, a civil RICO claim must involve: (1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an

*enterprise*."). Relevant to this Order, any civil RICO claim must properly plead (1) a pattern (2) of racketeering activity.

Wire fraud and money laundering are both acts that constitute "racketeering activity." 18 U.S.C. § 1961(1)(B). To plead a claim of wire fraud, a plaintiff must plead (1) a scheme to defraud, "(2) the use of, or causing the use of, wire communications in furtherance of the scheme," and (3) the defendant's specific intent to defraud. *United States v. Radley*, 632 F.3d 177, 184–85 (5th Cir. 2011) (quoting *United States v. Ingles*, 445 F.3d 830, 838 (5th Cir. 2006)); *see* 18 U.S.C. § 1343 (2012); *Ross v. City of Dallas*, Civ. Action No. 3:17-CV-0570-L, 2018 WL 1569905, at *5 (N.D. Tex. Mar. 30, 2018) (Lindsay, J.).

Plaintiffs allege in Count Ten of the Complaint that the Farish Defendants and/or New Summit Defendants "committ[ed] wire fraud in some forty (40) different transactions" as described in the Complaint. Based upon the law previously discussed by the Court, Plaintiffs fail to satisfy Rule 9(b) when pleading in this manner. Plaintiffs' reference to "some forty (40) different transactions" fails to sufficiently plead four of the five particularity requirements for the alleged wire fraud, specifically the "what, when, where, and how." *See Dorsey*, 540 F.3d at 339. Although Plaintiffs attempt to plead "who" committed the alleged wire fraud, they do not plead "who" with particularity: The Farish Defendants and/or New Summit Defendants consist of five natural-person defendants and four entity defendants. Within Count Ten, Plaintiffs do

not cite any specific, prior factual allegations within their Complaint that would support a claim of wire fraud. Plaintiffs instead make a conclusory allegation of wire fraud in hopes that through their shotgun pleading, some facts will support the civil RICO claim. Plaintiffs' shotgun pleading for their civil RICO claim does not satisfy the Rule 9(b) burden for pleading fraud.

Even upon the Court's review of the entire Complaint for references to wire fraud, Plaintiffs fail to adequately plead the predicate act of wire fraud. Upon review of the entire 524-paragraph Complaint, and more specifically the first 217 paragraphs of the Complaint that Plaintiffs claim in their Response support the civil RICO claim, the Court finds that the only explicit references to "some forty (40) different transactions" is in paragraphs 85 and 194 of the Complaint. Both of these paragraphs are the first paragraphs for the sections of the Complaint describing the First and Third Sub-Classes of the proposed class of Plaintiffs. The extent of Plaintiffs' pleading for these "transactions" is that "there were approximately forty (40)" transactions closed for each sub-class. The rest of the factual allegations for each of these sub-classes describe the Ponzi scheme as it relates to certain individual Plaintiffs, but the factual allegations do not recount the details of the "forty closed transactions" or how any of the Defendants committed wire fraud in each of the transactions. Plaintiffs therefore do not plead the forty instances of wire fraud with the necessary particularity to satisfy

Rule 9(b). *See Dorsey*, 540 F.3d at 339 (requiring plaintiff to plead the "who, what, when, where, and how" for particularity).

Plaintiffs also allege that the Farish Defendants and/or New Summit Defendants *conspired* to commit wire fraud in violation of 18 U.S.C. § 1371 and that these violations serve as predicate acts for their civil RICO claim. This claim fails for three reasons. First, 18 U.S.C. § 1371 does not exist; there is no such statute under Title 18. Second, assuming Plaintiffs meant 18 U.S.C. § 371 (2012), the general conspiracy statute, that statute is not "racketeering activity" under RICO and cannot serve as a predicate offense. § 1961(1). Third, assuming Plaintiffs were attempting to reference § 1962(d), an action based upon a violation of that subsection still requires a properly pleaded predicate act. § 1962(d) (making it unlawful to conspire to violate the other three subsections of § 1962); s*ee Elliott*, 867 F.2d at 880 (holding that all claims based upon a violation of § 1962 still require a plaintiff to plead a predicate act). As the Court has previously addressed, Plaintiffs have failed to plead wire fraud with the required particularity under Rule 9(b), so Plaintiffs cannot properly plead a violation of § 1962(d). *See Auto-Opt Networks, Inc. v. GTL USA, Inc.*, Civ. Action No. 3:14-CV-1252-D, 2014 WL 2719219, at *8 (N.D. Tex. June 16, 2014) (Fitzwater, C.J.) (holding that if plaintiffs fail to plead a pattern of racketeering activity, then a § 1962(d) claim based upon the same factual allegations cannot survive "because there can be no agreement to engage in a substantive RICO offense that does not exist").

Money laundering is also a predicate act for purposes of a civil RICO claim. § 1961(1). Money laundering occurs when

> (1) [a defendant] conduct[s] a financial transaction; (2) which he kn[ows] involve[s] proceeds arising from a specified unlawful activity; (3) with the intent to promote or further those illegal actions . . .; *or* (4) with the knowledge that the transaction's design was to conceal or disguise the nature or source of the illegal proceeds.

*U.S. v. Valdez*, 726 F.3d 684, 689–90 (5th Cir. 2013); *see* 18 U.S.C. 1956(a) (2012).

Plaintiffs fail to plausibly plead the predicate act of money laundering in their Complaint. In Count Ten of the Complaint, Plaintiffs only allege that the Farish Defendants and/or New Summit Defendants laundered or conspired to launder money through one or more of the New Summit Defendants. Plaintiffs provide no citation to any prior factual allegations in the Complaint. This conclusory allegation does not satisfy the pleading standard of *Iqbal* and *Twombly*, as Plaintiffs allege no facts as to how the money laundering occurred.

Furthermore, the Count Ten assertion is not plausible when viewed in light of the entire Complaint. In an abundance of caution, the Court reviewed the entire Complaint for references to money laundering. The only paragraphs in the rest of the Complaint that speak directly to money laundering are paragraphs 216 and 217, both of which involve the now-dismissed Defendant Jerry Hatfield ("Hatfield"). Plaintiffs make the conclusory assertion that Hatfield assisted the Farish Defendants and/or New Summit Defendants launder the illegal proceeds through various entities owned or

operated by Hatfield. This allegation about Hatfield's involvement in the money laundering renders Count Ten's allegation of money laundering implausible: Plaintiffs allege in paragraph 216 that Hatfield assisted in laundering the illegal proceeds by depositing the proceeds in the accounts of *Hatfield's own business entities*, but Count Ten alleges that the money laundering occurred through *the New Summit Defendant entities* with no reference to how, or if, Hatfield assisted. Furthermore, Plaintiffs dismissed Hatfield (Doc. No. 61). Because the few allegations found in the Complaint are both conclusory and contradictory, and because Plaintiffs have dismissed Hatfield, Plaintiffs have failed to plead a plausible claim of money laundering to serve as the predicate act for a civil RICO claim.

Plaintiffs also allege the predicate act of "[f]raudulently claiming an interest in one or more parcels of real property." Unlike the other three alleged predicate acts, Plaintiffs do not reference a federal statute for this act. The Court finds that this alleged conduct does not fall within the definition of "racketeering activity" for a prohibited state offense under RICO. *See* § 1961(1)(A) (listing the state felonies that may serve as predicate offenses under RICO). The Court also finds that this alleged conduct does not fall within the scope of one of the enumerated federal offenses under RICO. *See* § 1961(1)(B)–(G). Because this alleged conduct is not a predicate offense, Plaintiffs fail to plead a plausible civil RICO claim. *See Armendariz v. Chowaiki*, EP-14-CV-451-KC, 2016 WL 8856919, at *12–*13 (W.D. Tex. Mar. 31, 2016) (examining each alleged

predicate act to determine whether the act is enumerated in the RICO statute when plaintiff failed to properly cite statutes for the alleged predicate acts).

**B. No Facts in the Complaint Properly Plead a Civil Rico Claim.**

Although the Court has explained why Count Ten of the Complaint does not plausibly plead a civil RICO claim, the Court turns to the 217 paragraphs Plaintiffs allege, in their Response, support a civil RICO claim. After extensively reviewing the entire 524-paragraph Complaint, as well as the 154 pages of attached exhibits, the Court finds that Plaintiffs do not plead facts that support a plausible civil RICO claim.

In their Response, Plaintiffs argue that their factual allegations, which comprise the first 217 paragraphs of their Complaint, support the elements of their civil RICO claim. As addressed in the Court's previous analysis, such pleading is inappropriate, especially when Rule 9(b) applies to a claim. *See Williams*, 112 F.3d at 177–78; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) ("'[The court] will not strain to find inferences favorable to the plaintiffs' and [the court] will not accept 'conclusory allegations, unwarranted deduction, or legal conclusions.'" (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004))). However, in reviewing the referenced factual allegations, the Court finds that Plaintiffs do not plead any facts that would allow for a reasonable inference that Defendants committed a *pattern* of any of the alleged predicate acts. *See Iqbal*, 556 U.S. at 678.

14

The only cognizable predicate acts that Plaintiffs allege are wire fraud and money laundering. The Court has previously identified the two paragraphs in the factual allegations that speak to money laundering. No other alleged facts lead to a reasonable inference that any Defendant committed money laundering. *See id.* Plaintiffs detail at length how the Ponzi scheme operated, either generally or as to specific Plaintiffs, but Plaintiffs do not allege facts supporting a claim of money laundering as a part of the description of the Ponzi scheme. Plaintiffs allege that the Farish Defendants and/or New Summit Defendants "bilked" Plaintiffs "out of tens of millions of dollars" through the Ponzi scheme; however, Plaintiffs do not allege, until paragraphs 216 and 217, any conduct that could allow the Court to make a reasonable inference that the Farish Defendants and/or New Summit Defendants knowingly made financial transactions either (1) with the intent to promote a "specified unlawful activity" or (2) to conceal the nature or source of the funds. *See Valdez*, 726 F.3d at 690–91 (describing certain conduct that would support a criminal conviction for money laundering under the "concealment" and "promotion" theory); *see also* § 1956(c) (defining "specified unlawful activity"). Even if any of the alleged facts could support a reasonable inference of money laundering, Plaintiffs base their civil RICO claim upon a violation of § 1962(a). A civil RICO claim based upon a violation of § 1962(a) requires that the injury result from "the use or investment of racketeering income," not simply from the predicate acts themselves. *Abraham v. Singh*, 480 F.3d 351, 356–57 (5th Cir. 2007). In

other words, even if certain facts could support a claim of money laundering, the Complaint does not allege how an injury stems from the *use or investment* of racketeering income rather than the predicate act of money laundering. *See id.*

The factual allegations in the Complaint fail to support a civil RICO claim on the basis of wire fraud as the predicate act as well. Unlike the allegation of money laundering, the factual allegations in the Complaint for the first sub-class (¶¶ 85–140) do describe some specific wire communications, including emails, text messages, and phone calls. Plaintiffs attach as exhibits copies of some of the referenced communications. Plaintiffs likewise allege a few specific instances of fraud within these factual allegations for the first sub-class. However, upon review of these factual allegations, Plaintiffs fail to plead with particularity a *pattern* of wire fraud to sustain their civil RICO claim.

Assuming *arguendo* that these acts could serve as the predicate acts of wire fraud, they fail to support the existence of a *pattern* of wire fraud. "Establishing a pattern requires showing (1) a relationship between the predicate acts *and* (2) a threat of continuing criminal activity." *Ritter v. Howard*, No. 92-5261, 1994 WL 395209, at *6 (5th Cir. July 5, 1994) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). A plaintiff can demonstrate "continuity" in three ways:

> (1) showing that the related predicates involve a distinct threat of long-term racketeering activity; (2) showing that the predicate acts are a part of an ongoing entity's—usually an entity that exists for a criminal purpose—regular way of doing business; or (3) showing that the

predicates are a regular way of conducting a defendant's ongoing legitimate business.

*Id.* (citing *H.J. Inc.*, 492 U.S. at 242–43); *see also Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (describing two methods through which a plaintiff may demonstrate continuity). Plaintiffs allege fraud with more detail through their discussion of the July 26, 2016 draw request and the August 16, 2017 email and follow-up phone call, but these alleged acts of fraud fall well short of pleading continuity. *See Abraham*, 480 F.3d at 356 (describing how various alleged predicate acts occurring over two years and involving up to 200 victims could serve as a basis for continuity); *In re Burzynski*, 989 F.2d 733, 742–43 (5th Cir. 1993) (explaining how a plaintiff does not plead "continuity" when all the alleged predicate acts occur in relation to one transaction or event); *Allstate Ins. Co. v. Donovan*, Civ. Action No. H–12–0432, 2012 WL 2577546, at *7 (S.D. Tex. July 3, 2012) (finding that mere allegations of mail fraud did not support a plausible pattern of racketeering activity). Plaintiffs plead nothing to indicate that these three alleged acts of fraud were "part of Defendants' 'regular way of doing business.'" *Tel-Phonic Servs., Inc.*, 975 F.2d at 1140. Rather than serve as examples of how Defendants usually carried out the Ponzi schemes, the alleged fraudulent acts were all instead responsive to the Zucker Plaintiffs' concern with one project. *Malvino*, 840 F.3d at 232; *cf. Abraham*, 480 F.3d at 356.

The remainder of Plaintiffs' specific factual allegations in the Complaint (¶¶ 141–217) do not plead any plausible pattern of wire fraud. Even if the Court were to

find that the factual allegations for the second sub-class (¶¶ 141–193) properly pleaded wire fraud with particularity, these allegations only concern the Zucker Plaintiffs. Continuity is not sufficiently implicated by acts of wire fraud against only the Zucker Plaintiffs. *See Malvino*, 840 F.3d at 233 (finding that continuity did not exist when "there was no evidence of other victims"). Alleging in a conclusory fashion that the Zucker Plaintiffs are representative plaintiffs for the first two sub-classes does not in itself support a pattern of wire fraud. In the factual allegations for the third sub-class (¶¶ 194–217), which concern Wereszynski, GMW II, and Frost, Plaintiffs fail to plead any particular facts that could serve as the basis for wire fraud.

The Court does not comment upon the sufficiency of any of Plaintiffs' allegations for its *state-law* claims based upon fraud. The Court's previous analysis only addresses why, despite their lengthy factual allegations, Plaintiffs do not plead a plausible civil RICO claim. Plaintiffs' decision to (1) tack the civil RICO claim to the end of its Complaint, (2) include only statutory or conclusory language in Count Ten, and (3) then incorporate by reference the preceding 509 paragraphs suggests that Plaintiffs only hoped that some factual allegations could serve as the basis for a civil RICO claim. *See Malvino*, 840 F.3d at 231 (explaining how heightened requirements in a civil RICO claim "prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law" (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d Cir. 1995))); *Williams*, 112 F.3d at 177–78 (explaining how a "long-winded, even

prolix" complaint failed to plead a civil RICO claim); *see also Elliot*, 867 F.2d at 880 (explaining how each element of a civil RICO claim "is a term of art which carries its own inherent requirements of particularity"). Plaintiffs confirm this notion by arguing in their Response that they "are not required to re-plead and repeat within the causes of action the facts (Dkt. 1 @ ¶¶ 1-217) that support the elements of the claim(s)." Because Plaintiffs have failed to plead a plausible civil RICO claim in their Complaint, the Court dismisses Count Ten of the Complaint.

Although the Court has only directly addressed the Bank Defendants' Motion, the Court dismisses Count Ten of the Complaint as to all Defendants. Count Ten references all Defendants, alleging that the Bank Defendants and Title Defendants directly or indirectly assisted the Farish Defendants and/or New Summit Defendants in the pattern of racketeering activities. The Motion and Plaintiffs' Response do not solely address the Bank Defendants; both briefs speak to a general failure by Plaintiffs to plead a plausible civil RICO claim. Plaintiffs therefore had notice and an opportunity to respond to the argument that Plaintiffs failed to plausibly plead a civil RICO claim. Because Plaintiffs had notice and opportunity to explain why their civil RICO claim was properly pleaded and instead chose to argue that the 509 paragraphs incorporated within Count Ten supported the civil RICO claim, dismissal of the civil RICO claim as to all Defendants is appropriate. *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) ("While the district court did dismiss *sua sponte* some defendants who did not

join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants."); *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[I]t would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants."); *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related."); *see also Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 & n.1 (5th Cir. 2014) (holding that even if a court *sua sponte* dismisses claims without any prior notice or opportunity to respond, the court does not err if the dismissal is without prejudice); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (holding that notice and opportunity to respond is what is necessary to dismiss a claim *sua sponte*).

## C. The Court Declines to Exercise Jurisdiction over Plaintiffs' Remaining State Claims.

Having dismissed the civil RICO claim as to all Defendants, the Court discusses the implications on its jurisdiction. First, the Court discusses why granting leave to amend the Complaint is inappropriate in this case. Second, the Court discusses why it dismisses the case for lack of subject-matter jurisdiction.

### 1. Amendment of the Civil RICO Claim.

When a party cannot amend a pleading as a matter of course, the party may only amend a pleading "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The decision whether to grant or deny leave to amend a pleading is a matter within the district court's discretion; however, the Fifth Circuit has held that "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016). A plaintiff seeking leave under Rule 15(a)(2) does not need to file a formal motion, but the plaintiff must support the request for leave to amend with "*some* specificity." *Id.* at 590. A plaintiff that simply "tack[s] on a general curative amendment request" in response to a motion to dismiss does not provide a sufficient basis for why the court should grant leave. *Goldstein v. MCI WorldCom*, 240 F.3d 238, 254 (5th Cir. 2003); *see also Thomas*, 832 F.3d at 590–91. "[L]eave to amend under Rule 15 is by no means automatic." *Goldstein*, 240 F.3d at 254.

Plaintiffs do not properly request leave to amend their Complaint with regard to their civil RICO claim. First, Plaintiffs argue in their Response that their civil RICO claim is properly pleaded and that there is no need to amend their Complaint for that specific claim. Elsewhere in their Response, Plaintiffs specifically request leave to replead another one of their claims: the state-law claim for breach of fiduciary duty. Plaintiffs do not make a similar, specific request with regard to their civil RICO claim. Plaintiffs instead state that they "are not required to re-plead and repeat within the

causes of action the facts . . . that support the elements of the claim(s)." Plaintiffs argue that the pleaded facts in their Complaint support their civil RICO claim and no additional facts are necessary. This argument negates the efficacy, if there is any, of any attempt by Plaintiffs to make a general curative amendment request. *Id.*

Second, even if the Court were to find that Plaintiffs did request to amend their Complaint with regard to the civil RICO claim, the *specific* request to do so would still not justify a grant of leave to amend. In addressing the civil RICO claim in their Response, Plaintiffs do not refer to any specific facts in their Complaint. Plaintiffs further do not indicate how they may replead their civil RICO claim or "suggest . . . any additional facts not initially pled that could, if necessary, cure the pleading defects." *Goldstein*, 240 F.3d at 255. In light of Plaintiffs' 524-paragraph Complaint, and the lack of specificity as to how an amended complaint could cure the deficiencies of the civil RICO claim, the Court denies any cognizable request by Plaintiffs to amend their Complaint for purposes of pleading their civil RICO claim. *See Thomas*, 832 F.3d at 590 ("Although we have not provided strict guidelines as to what constitutes a sufficient request for leave to amend, it is clear that some specificity is required."); *Goldstein*, 240 F.3d at 254–55 (holding that the district court did not abuse its discretion to deny leave to amend a 110-page complaint when plaintiffs only "tacked on a general curative amendment request to the end of their response in opposition to the defendants' motions to dismiss"); *see also Bell v. Wells Fargo Bank, N.A.*, Civ. Action

No. 4:14-CV-388-Y, 2017 WL 6761770, at *3 (N.D. Tex. Oct. 13, 2017) (Means, J.)

("Plaintiff's amended complaint is a quintessential 'shotgun pleading,' which could

properly be disregarded." (footnote omitted)).

## 2. The Court Declines to Exercise Jurisdiction over the Remaining State-Law Claims.

Federal courts are vested with subject-matter jurisdiction over all civil actions

"arising under the Constitution, laws, or treaties of the United States," or where the

case in controversy exceeds $75,000 and is between citizens of different states, or

between citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. §§ 1331,

1332(a)(1)–(2) (2012). A federal court may have jurisdiction over related, state-law

claims on the basis of supplemental jurisdiction. 28 U.S.C. § 1367 (2012). A federal

court has no power to adjudicate claims where subject-matter jurisdiction does not exist

and, consequently, must dismiss the action. *Stockman v. Fed. Election Comm'n*, 138 F.3d

144, 151 (5th Cir. 1998); *see* FED. R. CIV. P. 12(h)(3). The Court has an obligation to

examine its subject-matter jurisdiction *sua sponte* at any time. *See FW/PBS, Inc. v. City

of Dallas*, 493 U.S. 215, 230–31 (1990); *see also Ruhrgas AG v. Marathon Oil Co.*, 526

U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on

their own initiative even at the highest level.").

Plaintiffs allege jurisdiction exists in this case on the basis of diversity

jurisdiction and federal-question jurisdiction. The only federal claim alleged by

Plaintiffs is the civil RICO claim, and as the Court explained in its previous analysis, that claim must be dismissed. Diversity jurisdiction does not exist as pleaded by the Plaintiffs in the Complaint. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (requiring "complete diversity of citizenship of the named parties" when plaintiffs in a class action plead jurisdiction on the basis of § 1332(a)).

"[The] general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011). This rule typically controls "when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Because the civil RICO claim has been dismissed early in the stages of litigation, and all other claims for relief are state-law claims, the Court declines to retain supplemental jurisdiction over Plaintiffs' remaining claims. *Enochs*, 641 F.3d at 159–60 (explaining the statutory and common-law factors that govern a district court's decision to retain supplemental jurisdiction over state-law claims after dismissing the federal claims). The Court therefore has no jurisdiction over this case.

## V. Conclusion

Because Plaintiffs fail to plead a plausible civil RICO claim, and the Court declines to exercise jurisdiction over the remaining state-law claims, the Court does not have jurisdiction over any of the claims in this case. The Court **GRANTS** the Motion

as to Plaintiffs' civil RICO claim and **DISMISSES WITHOUT PREJUDICE** the action as to all Defendants.

**SO ORDERED.**

Signed December 12th, 2018.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE